## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THE COSAC FOUNDATION, INC,    )
*d/b/a The Homeless Voice,*    )
    )
    Plaintiff,    )
    )
vs.    )    Case No. 23-cv-1499-MMH-JBT
    )
COLUMBIA COUNTY, FLORIDA,    )
    )
    Defendant.    )
_____)

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, the Cosac Foundation, Inc., d/b/a The Homeless Voice, by and through undersigned counsel, hereby moves for a preliminary injunction enjoining the Defendant, Columbia County, Florida, from enforcing the "Solicitation" and "Loitering" provisions of Columbia County Ordinance 2022-03.

The Ordinance prohibits Plaintiff—a nonprofit seeking to spread information about homelessness—from peacefully requesting donations on virtually all property owned by Columbia County. In fact, the Ordinance is so broad that it prohibits anyone from asking questions or simply sitting on a bench in the Courthouse plaza. The Ordinance is unconstitutional, both facially and as applied to Plaintiff, because it is overbroad in violation of the First Amendment

and unconstitutionally vague in violation of the Fourteenth.  Plaintiff thus seeks a preliminary injunction enjoining enforcement of the Ordinance.

## SUMMARY OF FACTS[1]

### A.    The Columbia County Courthouse Complex

The Columbia County Courthouse and Administration Building are located in Lake City's downtown business district and serve as focal points for public life in Columbia County.  Right outside the front steps of the Courthouse is a plaza that resembles a town square.  It extends from the Courthouse steps to a parking lot, and features footpaths, informational plaques, memorials, ample lighting, trees, and benches.  During business hours, dozens of people pass through the plaza on their way to and from the Courthouse.  Across the parking lot to the west is Olustee Park, which also contains footpaths, benches, and trees.  It frequently hosts farmers' markets and other events.

Next to Courthouse to the south is the County Administration Building.  The west entrance of the building contains several steps, outside of which is a paved area that extends to the parking lot.  The Administration Building houses several county offices, and there is a steady stream of pedestrians entering and exiting the building during business hours.

Individuals have been assembling and soliciting outside the Courthouse and Administration Building for years.  In 2020, protesters gathered in the

---

[1] Plaintiff adopts and incorporates herein the Statement of Facts as set forth in ¶¶ 12-59 of Plaintiff's Verified Complaint, ECF 1.

Courthouse plaza to demonstrate against COVID-19 measures.  Ex. C at 1.  The following year, another group protested there against police violence.  Ex. D.

### B.    Plaintiff – The Cosac Foundation

Plaintiff The Cosac Foundation, Inc. (the "Foundation") is a nonprofit charitable corporation that publishes and operates the Homeless Voice, a newspaper which seeks to raise awareness of homeless issues.  Compl. ¶ 12.  The Homeless Voice is primarily distributed by a solicitor program comprised of homeless and formerly homeless individuals.  *Id.* ¶ 13.  The program provides job skills and meaningful work to those involved in it.  *Id.*  Although the newspaper is free, the Foundation's solicitors accept voluntary donations from the public.  *Id.* ¶ 14.  Solicitors typically offer the free newspaper to members of the public and, regardless of whether the individual accepts the newspaper, request a donation. *Id.*  Many people who make a donation decline the newspaper.  *Id.*  The solicitors are always friendly and respectful.  *Id.* ¶ 15.

In July of 2019, the Foundation decided to solicit donations and distribute the Homeless Voice in the Courthouse plaza.  *Id.* ¶ 27.  The Foundation chose that location because of its status and location—a sizeable town-square-style plaza, with trees and benches, that has steady foot traffic during business hours.  *Id.* However, when Foundation solicitors began to distribute the Homeless Voice and solicit donations in the Courthouse plaza, they were told by court officials and sheriff's deputies that that they would not permit solicitors there.  *Id.* ¶ 28.

Officials did not cite any applicable Ordinance, but, in the spirit of cooperation, the Foundation sought another location for its activities. *Id.* Solicitors from the Foundation moved to the grounds of the Columbia County Administration Building, which is next to and south from the Courthouse, and is frequented by County employees and visitors. *Id.* ¶ 29.

Although not completely satisfied with this alternate location, the Foundation attempted to make it work. *Id.* ¶ 33. From 2019 to 2022, the Foundation solicited peacefully on the walkway to the side of the entrance of the Administration Building. *Id.* ¶ 34. Typically, Foundation solicitor Frank Leonardo would stand in front of the steps to the side entrance or sit on the large steps off to the side of the entrance. *Id.* ¶ 35; Leonardo Decl. ¶ 3 (Ex. B). He would not block foot traffic or attempt to harass anyone entering the building. Compl. ¶ 36; Ex. B ¶ 3. He offered the newspaper to individuals passing by and requested donations. Compl. ¶ 36; Ex. B ¶ 4. Many people who frequented the building got to know him, greeted him every day, and asked how he was doing. Compl. ¶ 40; Ex. B ¶ 6. This activity continued for three years. Compl. ¶ 34; Ex. B ¶ 1.

## C.    The Ordinance

Eventually, the Columbia County Board of County Commissioners became dissatisfied with the Foundation's presence on public property, and introduced an Ordinance to prohibit such conduct. *Id.* ¶ 41. During the consideration of the

proposed Ordinance, Commissioners' discussions made clear that the Ordinance was targeted at Foundation solicitors, ostensibly because some unspecified people had expressed discomfort with being asked for donations. *Id.* ¶ 54. One commissioner denigrated the Foundation's motives. *Id.* ¶ 55.

On May 19, 2022, the Columbia County Board of County Commissioners adopted Ordinance No. 2022-03 (the "Ordinance"). *See* Ex. A. As relevant here, the Ordinance prohibits the following activities:

> (7) Solicitation. To ensure all citizens unfettered access to governmental services, no solicitation shall be permitted within or upon any county building or the curtilage of said buildings.
>
> (8) Loitering. To ensure all citizens unfettered access to governmental services, no loitering shall be permitted within or upon any county building or the curtilage of said buildings.

Columbia County Code of Ordinances ("County Code") § 2-436. The Ordinance does not define "Solicitation" or "Loitering," and those terms are not defined elsewhere in the County Code. The ordinary meaning of solicitation is to request or seek to obtain something. *See, e.g., Solicitation*, Black's Law Dictionary (11th ed. 2019). This would include requesting donations, but it would also include requests "for advice, for directions, for [others'] prayers, for a signature on a petition, to read a treatise by John Locke, to join a political party, to visit a restaurant, to come to church" or for a vote. *Messina v. City of Fort Lauderdale, Fla.*, 546 F. Supp. 3d 1227, 1240 (S.D. Fla. 2021). One definition of "loitering" is to remain in a certain place "for no apparent reason." *Loitering*, Black's Law Dictionary (11th ed. 2019).

5

The Ordinance defines "County buildings" broadly to include "all buildings, together with the tenements, hereditaments, appurtenances, and adjacent easement and parking areas located within the county[.]" County Code § 2-431. "Curtilage" is defined as:

> all outdoor areas adjoining or adjacent to any county building extending from the vertical walls or fixtures of the building itself to the edge of the nearest public right-of-way, and should be construed as inclusive of all such outdoor areas upon the same parcel or lot without exclusion.

*Id.* The term "public right-of-way" is not defined within the Ordinance itself. Based on the use of "public right-of-way" elsewhere in the County Code and Florida Statutes, the term appears to include both "paved or unpaved" roads that are "intended for vehicular traffic," as well as adjoining sidewalks. County Code § 102-192; Fla Stat. § 334.03 (defining "Right-of-way" as "land in which the State, the department, a county, or a municipality owns the fee or has an easement devoted to or required for use as a transportation facility.").

The practical effect of the Ordinance is to prohibit "Solicitation" and "Loitering" on virtually all Columbia County property. That is because nearly all County property has some structure that constitutes a "building," and the Ordinance's definition of "Curtilage" extends from those buildings to "to the edge of the nearest public right-of-way"—which would typically be a sidewalk or street. County Code § 2-431. The upshot is that, on virtually all public property and parks in Columbia County—including the town-square-style Courthouse plaza—people cannot ask for anything, including for donations, votes, church

attendance, or directions ("solicitation"), nor can they remain in those areas without an apparent purpose ("loitering").

### D. Enforcement of the Ordinance

The Ordinance had its intended effect: It prohibited the Foundation's activities outside the Courthouse and Administration building. In July of 2022, a Columbia County Sheriff's Deputy approached Mr. Leonardo and told him that, because of a recently-passed law, he could no longer solicit at the Administration Building. Compl. ¶ 56; Ex. B ¶ 7. Fearing arrest or citation, Mr. Leonardo left. Compl. ¶ 56; Ex. B ¶ 7. Since then, the Foundation—along with any other person or group—has been barred from engaging in protected First Amendment activity in Columbia County's town square, or on virtually any County property. The First and Fourteenth Amendments do not tolerate this result, and therefore Plaintiff seeks injunctive relief to restore its free speech rights.

### ARGUMENT

The Foundation is entitled to a preliminary injunction enjoining the enforcement of Section 2-436(7)-(8) of the Ordinance, which prohibits "Solicitation" and "Loitering." In considering the propriety of preliminary relief, a district court considers four factors: (1) "whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer

outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public interest." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). All four factors weigh in Plaintiff's favor.

## I.    Plaintiff Is Likely to Succeed on the Merits of Its First Amendment Challenge to the Solicitation Provision.

Plaintiff is likely to succeed in showing that the Solicitation provision of the Ordinance violates the First Amendment. The provision effectively bans all solicitation on County property, including the areas in front of the Courthouse and Administration Building. Plaintiff will easily show that the Solicitation provision is broader than necessary to achieve the County's legitimate goal of preventing unobstructed access to public buildings. And Plaintiff will succeed in showing that a "substantial number of [the Ordinance]'s applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotation marks omitted).

### A.    The Ordinance Regulates Speech Within Traditional Public Fora.

As an initial matter, solicitation is a form of speech, and it is well-settled that Plaintiff's charitable solicitation is entitled to First Amendment protection. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 789 (1988); *see also Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection.").

The Solicitation provision is subject to heightened judicial scrutiny because it regulates speech within "traditional public fora." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011). Traditional public fora are places "historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks[.]" *United States v. Grace*, 461 U.S. 171, 177 (1983). Since "time out of mind," those places "have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). To determine whether an area is a public forum, courts consider a broad range of factors, including "the nature of the property and its compatibility with expressive activity," *Bloedorn*, 631 F.3d at 1232, and whether the property has "by long tradition or by government fiat . . . been devoted to assembly and debate[.]" *Perry*, 460 U.S. at 45.

Here, the Foundation seeks to solicit in two quintessentially public fora: the town-square style plaza outside the Courthouse, and the large walkway outside the Administration Building. Public plazas outside of government buildings and in parks have historically been used for demonstrations and public gatherings. In fact, Columbia County residents have used these particular areas for protests and gatherings in the last several years. *See* Exs. C, D (describing protests occurring in these areas). *See McDonald v. City of Pompano Beach*, 556 F. Supp. 3d 1334, 1354 (S.D. Fla. 2021) (analyzing whether "City dwellers have

traditionally used the [forum] to protest, panhandle, and express themselves.”). The areas have all the hallmarks of a public forum: footpaths, grassy areas, benches, trees, trash cans, and lighting.  The plaza is essentially a miniature public park.  These features “are objective indications that the government, by opening that space and installing (or allowing) those features, intended for citizens to assemble there.”  *Id.*  Both areas are open to the public and fully “compatib[le] with expressive activity.”  *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 802 (1985).

Additional contextual factors confirm that both properties are traditional public fora.  *See Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1136 (9th Cir. 2011) (“Context matters in forum analysis.”).  First, the Courthouse and Administration Building are two of the oldest buildings in Lake City.  *See* Ex. E (noting that the Courthouse appears on the National Register of Historic Places); *see also McDonald*, 556 F. Supp. 3d at 1356 (noting that the relative age of the fora “may be important to the forum analysis”).  Second, the two buildings are in the heart of Lake City’s downtown public area, and they are surrounded by parks devoted to public use and open for public expression.  The buildings, which are next to each other but separated by a narrow street, are flanked by two of Lake City’s principal public parks: Olustee Park to the West, and Lake De Soto to the East.

In short, the areas outside the Courthouse and Administration Building are areas designed "for general public expression and assembly[.]" *Bluedorn*, 631 F.3d at 1234. As such, they are traditional public fora where First Amendment protection is at its zenith. *Id.*

### B. The Solicitation Provision Is Not a Valid Time, Place, Manner Restriction.

Because the Ordinance applies in traditional public fora, the government's ability to restrict speech in these areas is "very limited." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Within such fora, "time, place, or manner" regulations are valid only if they (1) "are justified without reference to the content of the regulated speech," (2) "are narrowly tailored to serve a significant government interest," and (3) "they leave open ample alternative channels for communication of the information." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The Solicitation Provision fails all three prongs of this test.

#### 1. The Solicitation Provision Is Content-Based.

Even regulations that appear "facially content neutral" may be considered content-based restrictions if they cannot be "'justified without reference to the content of the regulated speech.'" *Id.* (quoting *Ward*, 491 U.S. at 791). The Ordinance is content-based, and therefore fails the first prong, for two reasons: 1) it was targeted at the Foundation, and 2) its purpose was to protect residents from the discomfort of solicitation.

First, an ordinance may be content based if it "targets disfavored speech by disfavored speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). That is the case here. Statements from the County Attorney and County Commissioners confirm that the true purpose of the Ordinance is to restrict the Foundation's speech. *See Ward*, 491 U.S. at 791 (when analyzing content neutrality, "[t]he government's purpose is the controlling consideration."). At the meeting in which the Ordinance was debated and adopted, a Commissioner asked the Ordinance's drafter, County Attorney Joel Foreman, whether the Ordinance would "prohibit the Homeless Shelter from sitting there and taking donations?"[2] The County Attorney answered in the affirmative, explaining that he had received complaints of people who experienced discomfort due to solicitors' presence.[3] One Commissioner who supported the Ordinance mentioned the Homeless Voice in particular and denigrated its motives, opining that the Foundation does not truly need money.[4] The Commissioners' statements reveal that they were motivated not by a genuine problem of building obstruction, but rather by an aversion to "disfavored speakers"—the Foundation's solicitors. *Sorrell*, 564 U.S. at 565.

Second, an ordinance is content-based if it "targets the direct impact of a particular category of speech," as opposed to a "secondary feature that happens to

---

[2] Video recording of Board of County Commissioners' Regular Meeting, May 5, 2022, at 8:20, https://www.columbiacountyfla.com/MeetingDetails.asp?Id=3494&Year=2022&Month=5.
[3] *Id*. at 8:30-9:20.
[4] *Id*. at 10:50.

be associated with that type of speech." *Boos v. Barry*, 485 U.S. 312, 321 (1988). Put differently, if government official regulate speech because it "cause[s] offense or ma[k]e[s] listeners uncomfortable, such offense or discomfort would not give [officials] a content-neutral justification to restrict the speech." *McCullen*, 573 U.S. at 481.

Here, the Ordinance's "Whereas" clauses make clear that the only purpose of the Ordinance is to prevent discomfort that some citizens experience in response to solicitation. Ex. A (describing "unwelcome interactions" with solicitors that supposedly "chill[] some citizens' desire to visit" County buildings). Whether those interactions are welcome or unwelcome depends entirely on the listeners' reaction to "a particular category of speech"—solicitation. *Boos*, 485 U.S. at 321. The Ordinance is therefore content based.

As such, the Solicitation provision must satisfy strict scrutiny, which requires the County to prove that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (quotation marks omitted). The County must also show that the laws are the "least restrictive means" of accomplishing that vital interest. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). The County cannot meet this burden. Defendant cannot possibly contend that banning all questions, and mere purposeless presence, in all County property is the least restrictive means of achieving a compelling government interest,

especially given the Supreme Court's "longstanding refusal to [punish speech] because the speech in question may have an adverse emotional impact on the audience." *Boos*, 485 U.S. at 322 (alteration in the original) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988)).

### 2. The Solicitation Provision Is Not Narrowly Tailored to a Significant Government Interest.

Turning to the second prong of the time-place-manner test, even if the Solicitation Provision is content-neutral, Defendant cannot meet its burden of showing that the Solicitation provision is "narrowly tailored to serve a significant government interest." *Perry*, 460 U.S. at 45. As a preliminary matter, the Ordinance fails this prong because preventing discomfort that allegedly deters access to public buildings is not a significant government interest. *See Boos*, 485 U.S. at 321. One cost of democratic freedom is that sometimes people will be exposed to speech that makes them uncomfortable, and allowing governments to prohibit speech for that purpose would nullify the First Amendment's protections. *See F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it.").

To the extent that the County's interest is preserving access to public buildings, the County cannot possibly show that the Solicitation provision is narrowly tailored to further that interest. To be narrowly tailored, a law must be a "close fit between ends and means[.]" *McCullen*, 573 U.S. at 486. It cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. To satisfy its burden, "the

government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen*, 573 U.S. at 495.

The Solicitation provision is not narrowly tailored to its purported end. First, as demonstrated above, in prohibiting all "Solicitation" without defining that term, the provision prohibits requests for donations, entreaties to support a political cause or to vote for a candidate, and any request, plea, or attempt to persuade. *See, e.g.*, *Soliciting*, Merriam-Webster's Online Dictionary 2023, https://www.merriam-webster.com/dictionary/soliciting (offering eight definitions); *Messina*, 546 F. Supp. 3d at 1240. A prohibition on virtually all questions is unquestionably overbroad.

Second, the Ordinance's broad geographic reach forecloses any argument that the Solicitation provision is narrowly tailored to protect access to buildings. Due to the Ordinance's broad definition of "Curtilage," the Solicitation provision applies to all outdoor County property that has a building. Thus, in its ostensible attempt to prevent obstruction of building entrances, the County has banned soliciting on all property between a County building and a public road, regardless of whether there have been any problems at those locations. *See McCullen*, 573 U.S. at 493 ("For a problem shown to arise only once a week in one city at one clinic, creating 35–foot buffer zones at every clinic across the Commonwealth is hardly a narrowly tailored solution."). The prohibition even extends potentially to miles of hiking trails and open areas in Columbia County parks. *See* Ex. F (showing that most of Columbia County's parks include some type of "Building"). This wildly broad geographic scope is not a narrowly tailored solution.

Defendant cannot possibly show that, in banning solicitation in such wide swaths of public property, the County has struck an "appropriate balance between the affected speech and the governmental interest that the ordinance purports to serve." *Watchtower Bible and Tract Society of N.Y. v. Village of Stratton*, 536 U.S. 150, 165 (2002); *see also Cutting v. City of Portland, Maine*, 802 F.3d 79, 82, 90 (1st Cir. 2015) (ordinance prohibiting standing on a median, which city enforced against panhandlers, was not narrowly tailored because it was "geographically overinclusive"); *Reynolds v. Middleton*, 779 F.3d 222, 231-232 (4th Cir. 2015) (ordinance prohibiting roadway solicitation was not narrowly tailored when it applied to all roads regardless of location and traffic volume); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002) ("The concerns behind . . . the ordinance were to alleviate sidewalk congestion [around the United Center] . . . [W]e cannot see how this can justify a restriction which prevents a peddler from selling his wares in large parking lots, less congested walkways, or sidewalks in less proximity to the United Center.").

Relatedly, the County cannot possibly show "that it seriously undertook to address the problem with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494. There is an obvious way to protect access to County buildings: by prohibiting the act of physically obstructing County buildings. *See id.* at 492 (discussing ways to keep building entrances unobstructed without unnecessarily burdening speech). Indeed, there is no reason for the County to prohibit speech at all, when its interest could be perfectly served by prohibiting the physical act of obstruction. *See City of Ladue v. Gilleo*, 512 U.S. 43, 58-59 (1994) ("[M]ore

temperate measures could in large part satisfy Ladue's stated regulatory needs without harm to the First Amendment rights of its citizens.").

While the Ordinance is vastly overinclusive in terms of geographic scope, it is bizarrely underinclusive in that it permits all types of conduct—apart from solicitation and loitering—that would inhibit "unfettered access" to County buildings.   Columbia Code § 2-436(8).   Without violating the Solicitation provision, individuals can obstruct access to the Courthouse by dancing in front of its entrance, playing musical instruments, rehearsing a theatrical production, debating, eating, and sleeping.[5]

The Ordinance's under-inclusiveness raises additional "doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015) (quoting *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 802 (2011)); *see also Messina*, 564 F. Supp. 3d at 1250-51 (addressing underinclusivity concerns within the context of a content-neutral time-place-manner regulation).   As discussed above, Commissioners' statements confirm that disfavoring the Foundation's speech is the true purpose of the Ordinance. Indeed, the drafter's statements reveal that the Ordinance was *intentionally* drafted to be broader than necessary to keep building entrances unobstructed. [6]

---

[5] It is unclear exactly which of these activities would separately violate the Loitering provision, contributing to its vagueness. *See* Part II, *infra*.
[6] Video recording of Board of County Commissioners' Regular Meeting, May 5, 2022, at 8:38, https://www.columbiacountyfla.com/MeetingDetails.asp?Id=3494&Year=2022&Month=5 (explaining, "you have to be broad in your strokes" in order to avoid problems of content neutrality and viewpoint neutrality).

In sum, the Solicitation provision does not have a "close fit between ends and means[.]" *McCullen*, 573 U.S. at 486. It burdens "substantially more speech than is necessary to further the [County]'s legitimate interests," *Ward*, 491 U.S. at 799, while neglecting to address conduct that directly impairs those interests. "Where a restriction on speech lacks this close and substantial relation to the governmental interests asserted, it cannot be, by definition, a reasonable time, place, or manner restriction." *Edenfield v. Fane*, 507 U.S. 761, 773 (1993).

For the same reasons, the Solicitation Provision is facially overbroad because it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). This provision fails under this formulation as well.

### 3. The Solicitation Provision Does Not Leave Open Ample Alternative Channels.

Lastly, the Solicitation provision fails the third prong of the time-place-manner test because it fails to leave open ample alternative channels for communication of the information.[7] Crucially, "the alternative channel (or channels) must be adequate and meaningful[.]" *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 952 (11th Cir. 2022). For the alternative channels to

---

[7] To the extent the Court agrees with the Foundation that the Ordinance is not narrowly tailored to further a significant, content-neutral governmental interest, the Court need not reach this third "alternative channels" prong. *See, e.g.*, *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1257 (10th Cir. 2021) ("[W]e conclude that Albuquerque's Ordinance is not narrowly tailored to serve its identified significant governmental interests. In light of this conclusion, we need not consider whether the Ordinance leaves open ample alternative channels of communication.").

suffice, "[t]he speaker must be able to effectively communicate his message to the intended audience in face of the Ordinance's restrictions." *Id.*

Defendant will likely argue that Plaintiff's members can solicit on Lake City's streets and sidewalks, which are not covered by the Ordinance. However, the areas outside the Courthouse and Administration Building are two of the only areas that experience high pedestrian traffic in a city that is not pedestrian friendly. Particularly for the Foundation's solicitor Frank Leonardo, who is mobility impaired, Ex. B ¶ 3, "communications from sidewalks and roadsides would <u>not</u> provide adequate alternative opportunities for communication." *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1079 (10th Cir. 2020) (alteration in the original). "[T]he added costs in money or time" that the Foundation's solicitors would incur at other locations "may make the difference between participating and not participating in some public debate." *Gilleo*, 512 U.S. at 45. Accordingly, there are no "adequate substitutes" for the areas outside the Courthouse and Administration building. *Id.* at 56.

In sum, the Solicitation provision is not justified by a content neutral purpose, is not narrowly tailored to serve a significant government interest, is facially overbroad, and fails to leave open adequate alternative channels of communication. *See McCullen*, 573 U.S. at 477. It violates the First Amendment and its enforcement should be immediately enjoined.

## II.    Plaintiff Is Likely to Succeed on the Merits of Its Fourteenth Amendment Challenge to the Loitering Provision.

A law violates the Due Process Clause of the Fourteenth Amendment and is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).    "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).  In fact, when protected speech is at issue, a "greater degree of specificity" is required. *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

As noted above, "loitering" is not defined by the Ordinance, but the common understanding of the term is "to remain in an area for no obvious reason." *Loiter*,  Merriam-Webster's  Online  Dictionary  2023, https://www.merriam-webster.com/dictionary/loiter; *see also Loitering*, Black's Law Dictionary (11th ed. 2019) (defining "Loitering" as "the criminal offense of remaining in a certain place (such as a public street) for no apparent reason.").[8] At the sole meeting in which the Ordinance was adopted, the County Attorney

---

[8]  Evincing the well-established principle that standardless loitering statutes are unconstitutional, Black's Law Dictionary notes: "Loitering statutes are generally held to be unconstitutionally vague." *Id.*

defined it as "hanging around without purpose."[9]  Thus, according to its ordinary meaning, the Loitering provision prohibits remaining in, with no apparent purpose, *any outdoor public space* that has a County building—including the Courthouse plaza, the walkway outside the Administration building, and any other park or plaza in the County.  This would encompass simply standing in a plaza or sitting on a park bench.

The Supreme Court has struck down an identical provision on vagueness grounds.  *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999).  In *Morales*, the Court invalided a law which prohibited "criminal street gang members" from "loitering," which was defined as "remaining in any one place with no apparent purpose."  *Id.* at 47.  The Court noted that the ordinance reached a substantial amount of innocent conduct and therefore violated "the requirement that a legislature establish minimal guidelines to govern law enforcement."  *Id.* at 60 (quotation marks omitted).

The result should be the same here. The Ordinance affords unfettered discretion to law enforcement officers to distinguish between those who "have an apparent purpose" to be on County property and those who do not.  *Id.* at 57.  If authorities are given unfettered discretion to determine who has a right to sit or stand in front of the Courthouse, enforcement will inevitably be leveled against

---

[9] Video recording of Board of County Commissioners' Regular Meeting, May 5, 2022, at 8:38, *available at* https://www.columbiacountyfla.com/MeetingDetails.asp?Id=3494&Year=2022&Month=5.

the poor and disadvantaged, such as the Foundation's solicitors, who are merely waiting for the next passer-by.

The Ordinance also fails to provide fair notice of the conduct it prohibits. Under the broad terms of the Ordinance, "a citizen . . . would be unable to discern whether he risked criminal responsibility by taking a leisurely stroll, by sitting briefly on a park bench, or by seeking shelter from the elements in the doorway of a building." *Gov't of Canal Zone v. Castillo*, 568 F2d 405, 409 (5th Cir. 1978) (quoting *Newsome v. Malcolm*, 492 F.2d 1166, 1172-73 (2d Cir. 1974)). This is the precise result the Due Process Clause protects against.

In the specific context of loitering provisions, courts have noted the well settled principle "that broadly worded criminal loitering laws which prohibit loitering without additional unlawful conduct are doubtlessly unconstitutional." *City of Chicago v. Morales*, 687 N.E.2d 53, 60 (Ill. 1997), *aff'd*, 527 U.S. 41. Therefore, "state courts have uniformly invalidated laws that do not join the term 'loitering' with a second specific element of the crime." *Morales*, 527 U.S. at 57-58; *see also Johnson v. Carson*, 569 F. Supp. 974, 978 (M.D. Fla. 1983) ("If loitering in a public place was the only element of the offense, the ordinance would be unconstitutional.").

Here, the Loitering provision suffers from that precise flaw: It lacks an element that would limit its reach to harmful conduct. While the Loitering provision contains a prefatory clause, "To ensure all citizens unfettered access to

governmental services," the conduct prohibited by the provision is simply "loitering." County Code § 2-436(8). *Cf. Dist. Of Columbia v. Heller*, 554 U.S. 570, 578 (2008) ("[A] prefatory clause does not limit or expand the scope of the operative clause."). Thus, the Loitering provision is unconstitutional because "loitering in a public place [i]s the only element of the offense[.]" *Johnson*, 569 F. Supp. at 978; *see also State v. Ecker*, 311 So. 2d 104, 107 (Fla. 1975) ("We readily recognize that if the statute broadly proscribed loitering or idling, without more, . . . it would be unconstitutional.").

These concerns are not trivial: "[T]he freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Morales*, 527 U.S. at 53; *see also Sawyer v. Sandstrom*, 615 F.2d 311, 316 (11th Cir. 1980) ("The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are implicit in the first and fourteenth amendments." (quotation marks omitted)); *United States v. Kilen*, 431 F.2d 627, 631 (5th Cir. 1970) (explaining that loitering laws cannot punish conduct "which is essentially innocent").

In sum, the loitering provision is void for vagueness because "men of common intelligence must necessarily guess at its meaning," *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 622 (1976), people cannot conform their conduct to the law, and "arbitrary and discriminatory

enforcement" is inevitable. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

## III. Plaintiff Has Established the Remaining Criteria for a Preliminary Injunction.

### A. Irreparable Injury

"[I]t is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Titusville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Ordinance directly infringes upon Plaintiff's First Amendment rights, so its harm cannot be "cured by the award of monetary damages." *Id.* at 1272. Irreparable injury is therefore established.

### B. Balance of Harms and Public Interest

The third and fourth preliminary injunction criteria are also satisfied. With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott*, 612 F.3d at 1297. On the other side of the ledger, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Id.* Enforcing unconstitutional laws also wastes valuable public resources. Finally, because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *Id.* at 1290, 1297.

## **CONCLUSION**

Based on the above argument and authorities, Plaintiff respectfully requests that this Court declare that the Loitering and Solicitation Provisions of Columbia County Ordinance 2022-03 are unconstitutional, both facially and as applied to Plaintiff, and immediately enjoin the County and its agents from enforcing them.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
dtrevisani@floridajusticeinstitute.org
Ray Taseff
Florida Bar No. 352500
rtaseff@floridajusticeinstitute.org
Florida Justice Institute, Inc.
PO Box 370747
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (Fax)

By:  *s/Ray Taseff*
        Ray Taseff

**Attorneys for Plaintiff**

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I electronically filed today, December 22, 2023, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case. I also served a copy of this motion, together with the Verified Complaint, on Defendant, as follows:

Joel Foreman, County Attorney
jforeman@columbiacountyfla.com

By:     *<u>s/Ray Taseff</u>*
        Ray Taseff